**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ADRIAN COSS, MARIBEL OCAMPO, individually and on behalf of all other Illinois citizens similarly situated, | ) ) ) ) | Case No. 1:22-cv-04277 |
| Plaintiffs, | ) ) ) | |
| v. | ) | Jury Trial Demanded |
| WALMART, INC., | ) ) | |
| Defendant. | ) | |

**CLASS ACTION COMPLAINT**

Plaintiffs, ADRIAN COSS and MARIBEL OCAMPO, as proposed class representatives, by and through their counsel, James C. Vlahakis, assert the following:

### I.  Introduction & Summary of the Illinois Biometric Information Privacy Act

1.  Plaintiffs ADRIAN COSS and MARIBEL OCAMPO ("Plaintiffs") are citizens of Illinois and reside in the Northern District of Illinois.

2.  Defendant WALMART, INC. ("Defendant") is a Delaware corporation, headquartered in Bentonville, Arkansas, doing business in Illinois.

3.  Defendant operates retail stores in the State of Illinois.

4.  Plaintiffs have minor children, identified as D. Coss and N. Coss (hereafter "Minor Children").

5.  Plaintiffs and their Minor Children have visited one or more of Defendant's stores located in the Chicagoland area to purchase items.

6.  Plaintiffs, the own behalf, on behalf of their Minor Children, and on behalf of putative class members assert that Defendant has violated their privacy rights as codified by the Illinois Biometric Information Privacy Act, 740 ILCS 14/1, *et seq.* ("BIPA").

1

7. BIPA was enacted in 2008 for the purpose of addressing a "very serious need for protections for the citizens of Illinois when it [comes to their] biometric information." Illinois House Transcript, 2008 Reg. Session No. 276.

8. BIPA's express Legislative Findings provide as follows:

(a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

740 ILCS 14/5.

9. BIPA defines "Biometric identifier" as follows:

"Biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or

2

stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

740 ILCS 14/10.

10.     BIPA defines "Biometric information" as follows:

"Biometric information" means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

740 ILCS 14/10.

11.     BIPA prohibits private entities from collecting, capturing, purchasing, receiving through trade, or otherwise obtaining a person's biometric information unless the private entity: (1) informs that person in writing that identifiers and information will be collected and/or stored; (2) informs the person in writing of the specific purpose and length for which the identifiers or information is being collected, stored or used; (3) receives a written release from the person for the collection of that data; and (4) publishes publicly available written retention schedules and guidelines for permanently destroying said data. *See* 740 ILCS 14/15(a) and (b).

12.     The Illinois Supreme Court has recognized that BIPA was enacted to preserve an individual's right to privacy and control over his/her/their biometric data:

Through the Act, our General Assembly has codified that individuals possess a right to privacy in and control over their biometric identifiers and biometric information. The duties imposed on private entities by section 15 of the Act (740 ILCS 14/15 (West 2016)) regarding the collection, retention, disclosure, and destruction of a person's or

3

customer's biometric identifiers or biometric information define the contours of that statutory right. Accordingly, when a private entity fails to comply with one of section 15's requirements, that violation constitutes an invasion, impairment, or denial of the statutory rights of any person or customer whose biometric identifier or biometric information is subject to the breach.

\* \* \*

The Act vests in individuals and customers the right to control their biometric information by requiring notice before collection and giving them the power to say no by withholding consent. . . . When a private entity fails to adhere to the statutory procedures, as defendants are alleged to have done here, "the right of the individual to maintain his or her biometric privacy vanishes into thin air. The precise harm the Illinois legislature sought to prevent is then realized." This is no mere "technicality." The injury is real and significant.

*Rosenbach v. Six Flags Ent. Corp.*, 432 Ill. Dec. 654, 129 N.E.3d 1197, 1206 (Ill. 2019)).

13.     As detailed below, within the past five years, upon information and belief, Defendant has used surveillance technology that is subject to the requirements of BIPA.

14.     As detailed below, the surveillance technology utilized by Defendant required it to obtain informed written consent from Plaintiffs, their Minor Children, and putative class members *before* Defendant was able to acquire or otherwise capture the biometric identifiers and/or biometric information of Plaintiffs and putative class members.

15.     Further, on information and belief, Defendant's surveillance technology has uploaded the unique "biometric identifiers" and "biometric information" Plaintiffs, their Minor Children, and putative class members to a database operated by a third-party, Clearview AI, Inc., formerly known as Smartcheckr Corp., Inc. ("Clearview").

16.     As set forth below, on information and belief, Defendant's surveillance technology has acquired or otherwise captured the unique "biometric identifiers" and "biometric information" Plaintiffs, their Minor Children, and putative class members in violation of the express privacy rights that are set forth by BIPA.

17.    Clearview, without providing any notice and without obtaining any informed written consent, has covertly scanned on-line photographs of millions of Americans and used artificial intelligence algorithms to scan the face geometry of each individual depicted in the covertly obtained facial images for the purpose of obtaining the unique biometric identifiers and corresponding biometric information of each individual.

18.    Clearview has also created a searchable biometric database (the "Biometric Database") that contained the unique biometric identifiers and corresponding biometric information of each individual for the purpose of identifying each individual depicted.

19.    On information and belief, Clearview has made its Biometric Database available to private entities, including Defendant.

20.    On information and belief, Defendant obtained access to the Biometric Database in order to identify people whose images appeared in surveillance footage obtained from Defendant's retail stores in located within the State of Illinois.

21.    On information and belief, Plaintiffs, their Minor Children and putative class members have visited Defendant's retail stores in located within the State of Illinois where Defendant obtained and uploaded their unique biometric identifiers and/or biometric information to the Biometric Database.

**II.    Jurisdiction and Venue**

22.    Section 20 of BIPA provides Plaintiffs with a private right of action to assert violations of BIPA. *See, Rosenbach*, 432 Ill. Dec. at 660, 129 N.E.3d at 1203; *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 620 (7th Cir. 2020).

23.    The Class Action Fairness Act ("CAFA"), codified at 28 U.S.C. § 1332(d), provides jurisdiction for civil action on the basis of a diversity of citizenship, if the amount in controversy exceeds $5,000,000.

24.     CAFA, in relevant part, states as follows:

(2) The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—

(A) any member of a class of plaintiffs is a citizen of a State different from any defendant[.]

\*\*\*

(6) In any class action, the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

28 U.S.C. §§ 1332(d)(2), 1332(d)(6).

25.     For federal jurisdiction to exist under CAFA, more than 100 putative class members should theoretically exist. 28 U.S.C. § 1332(d)(5)(B).

26.     Under CAFA, claims of individual class members are aggregated for the purposes of ascertaining whether jurisdiction is proper. *See* 28 U.S.C. § 1332(d)(6).

27.     As discussed in the previous Section, Plaintiffs are citizens of the State of Illinois and Defendant is a Delaware corporation with its principal place of business located in Santa Monica, California.

28.     Based upon this diversity of citizenship, Plaintiffs have satisfied Section 1332(d)(2) of CAFA.

29.     This civil action is styled as a putative class action where liquidated damages for *each* violation of BIPA may result in liquidated damages of up to $5,000.

30.     This Court has jurisdiction over this civil pursuant to Section 1332(d) of CAFA because there are more than 100 Plaintiff Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and Defendant and Plaintiffs are citizen of different states.

31.     CAFA jurisdiction is also satisfied pursuant to Sections 1332(d)(2) and (6) of CAFA because if a trier of fact in this civil action determines that Defendant

6

intentionally or recklessly violated a provision of BIPA, a finding of 1,001 violations would result in over 5 million dollars of liquidated damages.

32.     CAFA jurisdiction is satisfied pursuant to Sections 1332(d)(2) and (6) of CAFA because even if a trier of fact determines that Defendant negligently violated BIPA, liability as to 5,001 violations would result in 5 million dollars in liquidated damages.

33.     The Court has personal jurisdiction over Defendant because its contacts with Illinois are directly related to the violations of BIPA that are alleged in this Civil Action.

34.     28 U.S.C. § 1391(b)(2) provides that "[a] civil action may be brought in – (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"

35.     Venue is proper in this judicial district, a substantial part of the events or omissions giving rise to Defendant's violations of BIPA took place within the State of Illinois and this judicial district.

36.     Venue is also proper in this judicial district because Plaintiffs are citizens of the State of Illinois and they seek to vindicate their rights as provided by Illinois law.

37.     Further, venue is proper in this judicial district because Defendant's conduct has harmed Plaintiffs and putative class members who are all citizens of the State of Illinois and Plaintiffs live within the confines of the Northern District of Illinois.

## II.  Statutory Prohibitions and Damages

38.     Section 15(a) of BIPA requires private entities to develop written policies regarding the retention and destruction of "biometric identifiers" and "biometric information":

7

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

39.     "Section 15(a) expressly conditions lawful retention of biometric data on the continuation of the initial purpose for which the data was collected. The BIPA requirement to implement data retention and destruction protocols protects a person's biometric privacy just as concretely as the statute's informed-consent regime." *Fox*, 980 F.3d at 1155.

40.     "It follows that an unlawful retention of a person's biometric data is as concrete and particularized an injury as an unlawful collection of a person's biometric data." *Id.*

41.     As set forth below, Defendant has violated Section 15(a) of BIPA because it appears that it has failed to develop and publish written policies regarding the retention and destruction of "biometric identifiers" and "biometric information".

42.     Section 15(b) of BIPA requires private entities to obtained informed written consent from persons before a private entity can obtain their biometric identifiers and/or biometric information.

43.     Section 15(b) of BIPA specifically states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following actions:

(1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

44.     BIPA defines "[w]ritten release" as "informed written consent". 740 ILCS 14/10.

45.     Informed-consent is the "heart of BIPA." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

46.     Section 15(b) ensures that "consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained." *Id.*

47.     The failure to obtain informed consent before collecting an individual's biometric data necessarily inflicts an Article III injury. *Bryant*, 958 F.3d at 619, 624, 626 (comparing a violation of section 15(b) to "an invasion of [an individual's] private domain, much like an act of trespass").

48.     Defendant has violated Section 15(b) of BIPA because it collected Plaintiffs' biometric information without first obtaining informed written consent from Plaintiffs.

49.     Section 15(c) of BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

50.     Section 15(c) "flatly prohibits" certain for-profit transactions involving biometric data. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021).

51. Section 15(c) does not allow an entity to avoid liability merely by obtaining the informed consent of the individual whose biometric data it profits from.

52. Section 15(c)'s prohibition on for-profit transactions involving biometric data is "the same kind of general regulation as the duty to create and publish a retention and destruction schedule found in section 15(a)." *Thornley*, 984 F.3d at 1247.

53. On information and belief, Defendant has violated Section 15(c) of BIPA because it has sold, leases, traded, and/or otherwise profited from its use of Plaintiffs' biometric identifiers and/or their biometric information.

54. Section 15(d) of BIPA prohibits private entities from disclosing, redisclosing, or otherwise disseminating a person's biometric identifier or biometric information with first obtaining informed written consent of the subject.

55. On information and belief**, Defendant has** violated Section 15(d) of BIPA because it has disclosed, redisclosed, and/or otherwise disseminated Plaintiffs' biometric identifier and/or biometric information without their informed written consent.

56. In enacting BIPA, the Illinois legislature determined that violations of BIPA should result in awards of liquidated damages.

57. Section 20 of BIPA provides that "[a] prevailing party may recover for each violation: ... (1) against a private entity negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater" and that "[a] prevailing party may recover for each violation: ... (a) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater". 740 ILCS 14/20(1)-(2).

58. Additionally, in enacting BIPA, the Illinois legislature determined that "[a] prevailing party" in a BIPA action "may recover ... (3) reasonable attorneys' fees and

costs, including expert witness fees and other litigation expenses" and injunctive relief. 740 ILCS 14/20(3)-(4).

### III. Defendant's Violations of BIPA

59.     This putative Class Action Complaint, brought on behalf of citizens of the State of Illinois, alleging that Defendants have violated Sections 15(a), 15(b), 15(c) and 15(d) of BIPA.

60.     Defendants have violated BIPA because they utilize technology that has captured the biometric identifiers and/or biometric information (hereafter "Biometric(s)") of Plaintiffs and putative class members without first obtaining the informed written consent of Plaintiffs and putative class members.

61.     Defendants have failed to properly disclose to Plaintiffs and putative class members that Defendants were collecting the Biometrics of Plaintiffs and putative class members and transmitting their Biometrics to a third-party vendor.

62.     On information and belief, after the third-party vendor obtained the Biometrics of Plaintiffs and putative class members, the third-party vendor utilized the Biometrics of Plaintiffs and putative class members to create a database.

63.     Defendant has violated Section 15(b) of BIPA by obtaining and/or collecting the unique "biometric identifier" or "biometric information" of Plaintiffs and putative class members – without their informed written consent.

64.     Defendant has failed to disclose to Plaintiffs how it utilized their "biometric identifier" and "biometric information" *before* their "biometric identifier" and "biometric information" was obtained by each Defendant.

65.     Defendant has failed to disclose to Plaintiffs how it utilized their "biometric identifier" and "biometric information" *after* their "biometric identifier" and "biometric information" was obtained by each Defendant.

66. Defendant has failed to disclose to putative class members how it utilized the "biometric identifier" and "biometric information" *before* their "biometric identifier" and "biometric information" was obtained by each Defendant.

67. Defendant has failed to disclose to putative class members how it utilized the "biometric identifier" and "biometric information" *after* their "biometric identifier" and "biometric information" was obtained by each Defendant.

68. Defendant has failed to disclose to Plaintiffs members whether it *has* shared their "biometric identifier" or "biometric information" with third parties.

69. Defendant has failed to disclose to Plaintiffs whether it *will* share their "biometric identifier" or "biometric information" with third parties.

70. Defendant has failed to disclose to Plaintiffs whether it has sold their "biometric identifier" or "biometric information" to third parties.

71. Defendant has failed to disclose to putative class members whether it *has* shared their "biometric identifier" or "biometric information" with third parties.

72. Defendant has failed to disclose to putative class members whether it *will* share their "biometric identifier" or "biometric information" with third parties.

73. Defendant has failed to disclose to putative class members whether it has sold their "biometric identifier" or "biometric information" to third parties.

74. The proposed Classes in each Count set forth below are so numerous that the individual joinder of all members is impracticable.

75. Common questions of law or fact exist as a result of Defendant's violations of BIPA.

76. Plaintiffs' claims are typical of the claims of putative class members.

77. The defenses that Defendant may assert against Plaintiffs are typical of the defenses that Defendant may assert against putative class members.

78. Plaintiffs will fairly and adequately protect the interests of the putative class members as Plaintiffs seek to vindicate their rights afforded by BIPA and they seek to obtain declaratory, injunctive and monetary relief for all impacted class members.

79. Plaintiffs' counsel will fairly and adequately protect the interest of the putative class members. *See, e.g., Molinari v. Fin. Asset Mgmt. Sys., Inc.*, 2021 U.S. Dist. LEXIS 235401, *3 (N.D. Ill. Nov. 22, 2021) (appointing attorney James C. Vlahakis as provisional class counsel in putative class action involving the Fair Debt Collection Practices Act and the Telephone Consumer Protection Act, with final approval being granted by Dkt. 134); *In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS 50550, 2021 WL 1022867 (N.D. Cali. Mar. 17, 2021) (granting final approval of $310-$500 million dollar settlement where Mr. Vlahakis was appointed the Steering Committee (Dkt. 99) of a class action involving Apple's alleged practice of "throttling" down the performance of older model iPhones).

80. The proposed Classes should be certified to avoid inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class.

81. The proposed Classes should be certified to avoid adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

82. The proposed Classes should be certified because Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

83. The proposed Classes should be certified because questions of law or fact common to class members predominate over any questions affecting only individual

members, and because a class action is superior to other available methods for fairly and efficiently adjudicating the present controversy.

84.     The proposed Classes are ascertainable from Defendant's business records.

85.     The proposed Classes are limited by the applicable statute of limitations.

## IV. Causes of Action

### Count I – Asserting Violations of Sections 15(a) of BIPA

86.     Plaintiffs allege and reassert Paragraphs 1-85 as if fully set forth above:

87.     Informed-consent is the "heart of BIPA." *Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

88.     Section 15(a) of BIPA states as follows:

> A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for *permanently* destroying biometric identifiers and biometric information *when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity*, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

See, 740 ILCS 14/15(a) (emphasis supplied).

89.     Defendant has failed to "develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information" as required by 740 ILCS 14/15(a).

90.     On information and belief, Defendant does not destroy "biometric identifiers" or "biometric information" after "the initial purpose for collecting or obtaining such identifiers or information has been satisfied" as required by 740 ILCS 14/15(a).

14

91. On information and belief, Defendant has failed to develop, publicly disclose, and otherwise comply with a data-retention schedule and guidelines for the permanent destruction of "biometric identifiers" and "biometric information".

92. Defendant's failure to comply with BIPA's retention-and-destruction policy results Article III injury. "An unlawful retention of biometric data inflicts a privacy injury in the same sense that an unlawful collection does." *Fox v. Dakkota Integrated Sys., LLC*, 980 F.3d 1146, 1154-55 (7th Cir. 2020).

93. On information and belief, Defendant does not destroy a user's "biometric identifiers" or "biometric information" "within 3 years of the individual's last interaction with the private entity" as required by 740 ILCS 14/15(a).

94. As stated above, on information and belief, Defendant has violated Section 15(a) of BIPA by failing publicly disclose data-retention schedules for the *permanent* destruction of "biometric identifiers" and/or "biometric information" acquired from persons who have visited Defendant's retail establishments.

95. As stated above, on information and belief, Defendant has violated Section 15(a) of BIPA by failing publicly disclose data-retention guidelines for the *permanent* destruction of "biometric identifiers" and/or "biometric information" acquired from persons who have visited Defendant's retail establishments.

96. Defendant's violations of Section 15(a) of BIPA has resulted in the *unlawful retention* and sharing of users' "biometric identifiers" and/or "biometric information" with at least one third-party

97. Defendant's *failure to comply* with a retention-and-destruction policy has harmed Plaintiffs and putative class members where Defendant's unlawful retention of "biometric identifiers" and/or "biometric information" appears to go *beyond* the time limits set by section 15(a). *See, e.g., Fox*, 980 F.3d at 1149 and 1155 (finding a "concrete

and particularized" harm where the plaintiff alleged that the defendant violated the "full panoply" of section 15(a) requirements).

98.     In summary, Defendant violated BIPA by collecting, using, modifying and/or storing the "biometric identifiers" and/or "biometric information" of Plaintiffs and putative class members without their informed written consent.

99.     Plaintiff and putative class members have suffered damages in the form of liquidated damages and provided by 740 ILCS 14/20(1)-(2).

100.     The proposed **Section 15(a) Class** is defined as:

> All Illinois citizens who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant during visits to Defendant's Illinois locations without Defendant first obtaining "informed written consent" as defined by the Illinois Biometric Information Privacy Act, 740 ILCS 14/10.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

> a.  Liquidated damages for negligent violations of Section 15(a);
> b.  Liquidated damages for intentional and/or reckless violations of Section 15(a);
> c.  Reasonable attorney's fees and costs;
> d.  Enjoining Defendant from further violations of Section 15(a);and
> e.  Certifying the proposed Class set forth above.

**Count II – Asserting Violations of Section 15(b) of BIPA**

101.     Plaintiffs allege and reassert Paragraphs 1-85 as if fully set forth above:

102.     Section 15b of BIPA states that "[n]o private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first" takes the following three (3) actions:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

16

(2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

(3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b)(1)-(3).

103.    As set forth in Section III, Defendant violated of Section 15(b)(1) of BIPA by failing to inform Plaintiffs and putative class members in writing that it was storing and/or collecting their "biometric identifiers" or "biometric information". 740 ILCS 14/15(b)(1).

104.    As set forth in Section III, Defendant violated of Section 15(b)(2) of BIPA by failing to inform Plaintiffs and putative class members in writing of the specific purpose and length of term for which their "biometric identifiers" and/or "biometric information" was "being collected, stored, and used." 740 ILCS 14/15(b)(2).

105.    As set forth in Section III, Defendant violated of Section 15(b)(3) of BIPA by failing to obtain a written release executed by Plaintiffs and putative class members before Defendant collected their "biometric identifiers" and/or "biometric information". 740 ILCS 14/15(b)(3).

106.    Violations of Section 15(b) of BIPA result in concrete injuries:

As the Illinois Supreme Court recognized in *Rosenbach*, the informed-consent regime laid out in section 15(b) is the heart of BIPA. The text of the statute demonstrates that its purpose is to ensure that consumers understand, before providing their biometric data, how that information will be used, who will have access to it, and for how long it will be retained. The judgment of Illinois's General Assembly is that the sensitivity of biometric information and the risk of identity theft or other privacy or economic harm that may result from its dissemination, necessitates that people be given the opportunity to make informed choices about to whom and for what purpose they will relinquish control of that information. Compass's failure to abide by the requirements of section 15(b) before it collected Smart Market users' fingerprints denied Bryant and others like

17

her the opportunity to consider whether the terms of that collection and usage were acceptable given the attendant risks.

This was not a failure to satisfy a purely procedural requirement. Rather, as in Robertson, Compass withheld substantive information to which Bryant was entitled and thereby deprived her of the ability to give the informed consent section 15(b) mandates. Equipped with the missing information, she may have chosen not to use the vending machines and instead brought her own lunch or snacks. Or she may have opted for the convenience of the machines. She did not realize that there was a choice to be made and what the costs and benefits were for each option. This deprivation is a concrete injury-in-fact that is particularized to Bryant. She thus meets the requirements for Article III standing on her section 15(b) claim.

*Bryant v. Compass Grp. USA, Inc.*, 958 F.3d 617, 626 (7th Cir. 2020).

107.    The failure to obtain informed consent before collecting an individual's biometric data necessarily inflicts an Article III injury. *Bryant*, 958 F.3d at 619, 624, 626 (comparing a violation of Section 15(b) to "an invasion of [an individual's] private domain, much like an act of trespass").

108.    Defendant's collection, use, modification, monetization and/or storage of Plaintiff and putative class members' "biometric identifiers" and/or "biometric information" - without informed written consent - violates Section 15(b).

109.    As explained above, Defendant collected, used, stored and sold their "biometric identifiers" and/or "biometric information" in violation of the prohibitions and requirements set forth by BIPA.

110.    As explained above, Defendant did not obtain the informed written consent of Plaintiffs and putative class members to collect, use, modify, sell and/or store their "biometric identifiers" and/or "biometric information".

111.    On information and belief, Defendant has profited from its colllection, use, storage and/or sale of the "biometric identifiers" and/or "biometric information" of Plaintiffs and putative class members.

112. In summary, Defendant violated BIPA by collecting, using, modifying and/or storing the "biometric identifiers" and/or "biometric information" of Plaintiffs and putative class members without their informed written consent.

113. Plaintiff and putative class members have suffered damages in the form of liquidated damages and provided by 740 ILCS 14/20(1)-(2).

114. The proposed **Section 15(b) Class** is defined as:

> All Illinois citizens who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by technology used by Defendant during visits to Defendant's Illinois locations - *without* Defendant first informing class members in writing that (a) a biometric identifier or biometric information was being collected or stored when a class member visited one of Defendant's Illinois locations or (b) the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used – or (c) where Defendant failed to receive written release executed by the class member, or in the case of minors, the legally authorized representative of the minors.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a. Liquidated damages for negligent violations of Section 15(b);
b. Liquidated damages for intentional and/or reckless violations of Section 15(b);
c. Reasonable attorney's fees and costs;
d. Enjoining Defendant from further violations of Section 15(b);and
e. Certifying the proposed Class set forth above.

**Count III – Asserting Violations of Section 15(c) of BIPA**

115. Plaintiffs allege and reassert Paragraphs 1-85 as if fully set forth above:

116. Section 15(c) of BIPA provides that "[n]o private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information." 740 ILCS 14/15(c).

117. Section 15(c) of BIPA "flatly prohibits" the above specified for-profit transactions involving biometric data. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1247 (7th Cir. 2021).

118. Defendant cannot avoid liability for violating Section 15 by obtaining the informed written consent Plaintiff and putative class members.

119. On information and belief, Plaintiffs and putative class members have been harmed by Defendant profiting from the sale, lease, trade, and/or monetization of their "biometric identifiers" and/or "biometric information."

120. As set forth above in Section III, on information and belief, Defendant has failed to disclose to Plaintiffs and putative Class members that it has sold, leased, traded or otherwise profited off of the capture of their biometric identifier and/or biometric information.

121. On information and belief, Defendant has sold, leased, traded, and/or profited from its capture of the unique "biometric identifier" or "biometric information" of Plaintiffs and putative class members.

122. The proposed **15(c) Class** is defined as:

> All Illinois citizens who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant during visits to Defendant's Illinois locations where Defendant thereafter sold, leased, traded, or otherwise profited from its capture of class members' "biometric identifier" or "biometric information."

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

    a. Liquidated damages for negligent violations of Section 15(c);

    b. Liquidated damages for intentional and/or reckless violations of Section 15(c);

    c. Reasonable attorney's fees and costs;

    d. Enjoining Defendant from further violations of Section 15(c); and

e.  Certifying the proposed Class set forth above.

**Count IV – Asserting Violations of Section 15(d) of BIPA**

123.  Plaintiffs allege and reassert Paragraphs 1-85 as if fully set forth above:

124.  Section 15(d) prohibits a private entity in possession of biometric data from disclosing or disseminating that data except in certain circumstances, such as obtaining a subject's consent. 740 ILCS 14/15(d).

125.  In full, Section 15(d) of BIPA states as follows:

No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure;

(2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative;

(3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or

(4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

See, 740 ILCS 14/15(d).

126.  Defendant has violated Section 15(d) of BIPA because it has disclosed, redisclosed, and/or otherwise disseminated Plaintiffs and putative class members' "biometric identifiers" and/or "biometric information" without their informed written consent.

127.  For example, Defendant has violated Section 15(d) of BIPA by disclosing, redisclosing, and/or otherwise disseminating Plaintiffs and putative class members'

"biometric identifiers" and/or "biometric information" to third-parties - without the informed written consent Plaintiffs and putative class members.

128.    The Seventh Circuit has held that the unlawful disclosure of biometric data invades an individual's private domain "just as surely as an unconsented collection or retention does." *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1161 (7th Cir. 2021).

129.    The unlawful disclosure of an individual's biometric data inflicts an injury that satisfies Article III. *Id.*

130.    The proposed **15(d) Class** is defined as:

> All Illinois citizens who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant during visits to Defendant's Illinois locations where Defendant thereafter disclosed, redisclosed, or otherwise disseminated class members' – "biometric information" and/or "biometric identifiers" without their consent or authorization.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

a. Liquidated damages for negligent violations of Section 15(d);
b. Liquidated damages for intentional and/or reckless violations of Section 15(d);
c. Reasonable attorney's fees and costs;
d. Enjoining Defendant from further violations of Section 15(d); and
e. Certifying the proposed Class set forth above.

**Count V – Asserting Violations of Section 15(e) of BIPA**

131.    Plaintiffs allege and reassert Paragraphs 1-85 as if fully set forth above:

132.    Section 15(e)(1) of BIPA states that a "private entity in possession of a biometric identifier or biometric information shall ... store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry".

133.    Section 15(e)(2) of BIPA states that a "private entity in possession of a biometric identifier or biometric information shall ... store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information.

134.    On information and belief, Defendant violated Section 15(e)(1) of BIPA because, while in possession of the biometric identifiers and biometric information of Plaintiffs and putative class members, Defendant failed to reasonably protect from disclosure the biometric identifiers and biometric information of Plaintiffs and putative class members.

135.    On information and belief, Defendant violated Section 15(e)(2) of BIPA because, while in possession of the biometric identifiers and biometric information of Plaintiffs and putative class members, Defendant failed to protect the biometric identifiers and biometric information of Plaintiffs and putative class members – in manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information of the Plaintiffs and putative class members – such as credit card information.

136.    The proposed **15(e) Class** is defined as:

> All Illinois citizens who had their "biometric information" and/or "biometric identifiers" collected, captured and otherwise obtained by Defendant during visits to Defendant's Illinois locations where Defendant thereafter failed to reasonably protect from disclosure the biometric identifiers and biometric information of Plaintiffs and putative class members or failed to protect the biometric identifiers and biometric information of Plaintiffs and putative class members – in manner that is the same as or more protective than the manner in which Defendant stores, transmits, and protects credit card data.

WHEREFORE, Plaintiffs respectfully request that this Honorable Court provide Plaintiffs and putative class members with the following relief:

    a.    Liquidated damages for negligent violations of Section 15(e);

    b.    Liquidated damages for intentional and/or reckless violations of Section 15(e);

    c.    Reasonable attorney's fees and costs;

    d.    Enjoining Defendant from further violations of Section 15(e); and

    e.    Certifying the proposed Class set forth above.


**Jury Demand**

Plaintiffs demand a jury trial.

**James C. Vlahakis**
James C. Vlahakis
Senior Counsel
Sulaiman Law Group, Ltd.
2500 S. Highland Ave. Suite 200
Lombard, IL 60148
630-581-5456
Fax: 630-575-8188
jvlahakis@sulaimanlaw.com

Dated: 8.12.2022